UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT ▮▮▮▮▮▮▮ DIVISION

| | |
|---|---|
| RANDY WILSON, Petitioner | CIVIL ACTION NO. 5:13-CV-02852; SEC. P |
| VERSUS | JUDGE FOOTE |
| N BURL CAIN, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (28 U.S.C. § 2254) filed by *pro se* Petitioner Randy Wilson ("Wilson") (#456403) on October 11, 2013. (Doc. 1). Wilson attacks his 2008 second degree murder conviction.

I. Background

The Louisiana Second Circuit Court of Appeal set forth the relevant facts of the case. On April 1, 2006, Wilson and Felton Dorsey ("Dorsey"), armed with a gun, forced their way into the home of Bobbie Prock ("Mrs. Prock"), tied her to a chair, and placed a blanket over her head. (Doc. 7-13, p. 221/229). They subsequently took numerous items from her home. (Id.). Prock's son, Joe Prock, arrived at the house soon after to check on his mother. (Id.). Joe Prock was bound and struck in the head with a gun handle numerous times, and died as a result of his injuries. (Id.). Wilson and Dorsey then set fire to Joe Prock's body and Mrs. Prock's house before fleeing. (Id.). Mrs. Prock was able to free herself and get out of the house. (Id.).

On May 17, 2006, Wilson and Dorsey were charged by indictment with one count of first degree murder and one count of attempted first degree murder. (Doc. 7-

13, pp. 220-21/229). The state pursued the death penalty. (Doc. 7-13, p. 221/229). However, pursuant to a plea agreement, Wilson pled guilty to one count of second degree murder, with a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence, in exchange for his testimony at the trial of Dorsey, his co-defendant. (Doc. 7-13, pp. 223-24/229). The Boykin guilty plea colloquy occurred on July 27, 2009, and Wilson reserved his right to appeal pursuant to State v. Crosby, 338 So.2d 584 (La. 1976). (Doc. 7-13, p. 224/229).

Wilson's appellate counsel filed an appellate brief pursuant to State v. Jyles, 704 So.2d 241 (La. 1997), finding no non-frivolous issues to raise on appeal. (Doc. 7-13, p. 170/229). Wilson then filed a *pro se* supplemental brief, wherein he argued that his plea bargain was constitutionally infirm because the State did not perform its part of the bargain, and that the trial court had not properly ruled on his pre-trial motions to suppress his statements. (Doc. 7-13, p. 194/229). The Second Circuit affirmed Wilson's conviction and sentence, after finding no merit in his argument that his statement was not voluntary or that the State had breached the plea agreement. (Doc. 7-13, pp. 219, 228/229). Wilson sought a supervisory writ from the Louisiana Supreme Court which was denied without comment on May 4, 2012. (Doc. 7-14, p. 58/311).

Wilson then filed an application for Post-Conviction Relief on August 13, 2012. (Doc. 7-14, p. 89/311). The First Judicial District Court denied the application on September 20, 2012, finding no merit in Wilson's arguments. (Doc. 7-14, p. 145/311). Wilson sought a supervisory writ from the Second Circuit Court of Appeal, which was

denied on November 29, 2012. (Doc. 7-14, pp. 156, 160, 231/311). Wilson then took a supervisory writ to the Louisiana Supreme Court, which was denied without comment on July 31, 2013. (Doc. 7-14, pp. 233, 311/311).

Wilson filed this writ for habeas corpus on October 11, 2013. (Doc. 1).

II. Law and Analysis

A. Standard of review.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(1), and questions of fact are reviewed under Section 2254(d)(2). See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir.), *cert. den.*, 534 U.S. 885 (2001), and cases cited therein.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Dowthitt v. Johnson, 230 F.3d 733, 740–41 (5th Cir.2000) (quoting Williams v. Taylor, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." Id. at 741. Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B.  Petitioner's right to effective assistance of counsel was not violated.

Wilson claims that his counsel was ineffective because counsel "misrepresent[ed] the strength of the State's case against him to induce Petitioner into entering a plea of guilty." (Doc. 1, p. 25/34).

Wilson alleges that his defense attorney, Joel Pearce ("Pearce"), failed to inform him of the State's evidence against him, thereby misrepresenting the strength of the State's case. Wilson states this caused him to enter into a plea agreement to testify against Dorsey, and to accept the sentence of life imprisonment without benefits. Wilson attached a newspaper article entitled "Judge recuses self from murder trial," regarding a Caddo District Judge's recusal from Wilson's murder trial

4

due to an allegedly acrimonious relationship between himself and Pearce. (Doc. 1, p. 26/34). Wilson notes that his appellate counsel's brief mentioned the *ex parte* removal of Pearce as the second chair in Wilson's murder case, the trial judge's recusal, and the eventual reassignment of Pearce back to Wilson's murder case.

Wilson raised this claim in his application for post-conviction relief, filed with the First Judicial District Court, and then urged in supervisory writs to the Second Circuit Court of Appeal and the Louisiana Supreme Court. Defendant concedes this claim was exhausted in state courts.

"An ineffective assistance of counsel claim presents a mixed question of law and fact." Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Therefore, the claim is analyzed under Section 2254(d)(1), and relief is not available unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

To prevail on his claim, Wilson must prove two elements: that counsel's performance was deficient and that those deficiencies were prejudicial. The same two part standard found in Strickland v. Washington applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The first prong is satisfied by a showing that "counsel's representation fell below an

5

objective standard of reasonableness." Hill v. Lockhart, 474 U.S. at 57 (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). To meet the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. at 59.

Wilson has only made conclusory allegations that Pearce failed to inform him of the State's evidence against him, or misrepresented the State's case against him, thereby causing him to enter into a plea agreement with the State. Wilson cites to his appellate counsel's brief to note the *ex parte* removal of Pearce as second chair and his eventual reassignment following the trial judge's recusal. However, appellate counsel's brief was pursuant to State v. Jyles, 704 So.2d 241 (La. 1997), as appellate counsel assigned no errors due to a lack of non-frivolous issues that could be raised on appeal. (Doc. 7-13, p. 170/229). The brief noted that these issues were resolved before Wilson's guilty plea and stated that "any actions of Judge Emanuel became a moot issue when he recused himself." (Doc. 7-13, p. 175/229). The Second Circuit reviewed the brief and issued a ruling denying the claim. (Doc. 7-13, pp. 219, 228/229).

Furthermore, Wilson has not shown that, but for counsel's errors, he would have insisted on going to trial instead of pleading guilty. It is undisputed that, under the plea deal, he would testify against his co-defendant Dorsey, and his charges would be reduced to second degree murder and he would receive a sentence of life imprisonment without benefits. Originally, he was facing a first degree murder charge and the State was pursuing the death penalty. (Doc. 7-13, pp. 220-21/229). His

co-defendant, against whom Wilson testified, was convicted and sentenced to death. Additionally, as noted by the Second Circuit, the State had a strong case against Wilson. In their ruling affirming Wilson's conviction and sentence:

> On April 17, 2007, the trial court conducted a free and voluntary hearing to determine whether the statements made by Dorsey and the defendant were admissible. Detective Leonard Andrew Scoggins of the Caddo Parish Sheriff's Office testified that he participated in the investigation of the home invasion and homicide in this matter. Detective Scoggins stated that Dorsey was developed as a suspect through witness information and that the defendant was developed as a suspect through phone records and the tracking of a cell phone.
>
> The defendant was located at his residence on April 6, 2006, and asked if he would accompany law enforcement officers to their office to talk about something. The defendant agreed to go with the officers to the detectives' office where he was interviewed by Detective Scoggins and Sergeant Bill Rehack. The defendant was given his *Miranda* rights and chose not to sign the waiver of rights form. He stated that he understood his rights. He was not under the influence of alcohol or narcotics and was not forced or threatened to give a statement. After being informed of his *Miranda* rights, the defendant chose to give a statement. He originally said that he was not at the Prock residence on April 1, 2006, but later admitted that he was in the residence with Dorsey. He claimed that Dorsey forced him to participate in the home invasion and robbery. According to the defendant, Dorsey killed Mr. Prock. The defendant admitted helping set fires in Mrs. Prock's house.

State v. Wilson, 79 So.3d 1265, 1267 (La. 2nd Cir. Dec. 14, 2011). Additionally, Mrs. Prock's statement (doc. 7-10, p. 169/239), which due to her age had been perpetuated for trial testimony, indicated that it was the taller of the two men who pulled a gun on her (doc. 7-10, p. 186/239), and that both men worked as a team (doc. 7-10, p. 199/239).

Wilson has provided no support for his claim that trial counsel misrepresented the strength of the State's evidence against him. Furthermore, Wilson has not shown

7

that he was prejudiced by the events leading to the recusal of the trial judge, and that it led to him taking the plea deal as opposed to going to trial. Therefore, Wilson has failed to meet his burden of proving that trial counsel rendered ineffective assistance of counsel.

    C.    **<u>Petitioner's guilty plea was entered knowingly, intelligently, and voluntarily.</u>**

Wilson next alleges that his guilty plea was not entered into knowingly, intelligently, or voluntarily. He states that he did not know that he had the right to remain silent, in violation of <u>Boykin v. Alabama</u>, and that if he had known about that right, he would not have pled guilty and instead would have gone to trial. He further states that he was compelled to accept the guilty plea offered by the State, because he was encouraged to speak with Pearce, his attorney, for an additional period of time during the plea negotiation. He states this was to ensure that Pearce would persuade him into taking the offer.

The State contends Wilson failed to exhaust this claim, stating that Wilson failed to articulate the claim as a federal question at the state level, thereby not giving the state courts the opportunity to address it. In order to exhaust a claim, the petitioner must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoner's federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (internal quotations omitted). Therefore, the state courts must be alerted to the fact that the petitioner is asserting a claim under the United States Constitution. <u>Id.</u> To satisfy the "fairly present" requirement, Wilson must have "referred to a specific federal constitutional

8

right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." See Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006), *cert. denied*, 549 U.S. 1134 (2007).

In Wilson's Post-Conviction Relief Application filed in the First Judicial District Court (doc. 7-14, p. 89/311), Wilson states that he did not enter the guilty plea knowingly or voluntarily, as he was unaware of the right to remain silent at trial, and referred to the colloquy at his guilty plea. Wilson begins his argument by citing to the Louisiana Code of Criminal Procedure 556.1(3), which provides that the defendant has a right not to be compelled to incriminate himself, in support of his argument that his colloquy did not conform to the statute. (Doc. 7-14, p. 100/311). However, Wilson did cite to the United States Supreme Court opinion in Boykin v. Alabama, stating that it noted that several constitutional rights are involved in a waiver process. (Doc. 7-14, p. 102/311). Wilson then cites specifically to the privilege against self-incrimination guaranteed by the Fifth Amendment and made applicable to the states under the Fourteenth Amendment. (Id.). Wilson reasserted his claim alleging that his guilty plea was in violation of the rights guaranteed by the United States Constitution, specifically his right to remain silent, in violation of the Fifth Amendment. Additionally, he states that he was not informed of his right to a jury trial, in violation of his constitutional rights to due process and the equal protection of the law. (Doc. 7-14, pp. 165-66/311). Therefore, the Court will consider this claim as properly exhausted in the state court.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." <u>Boykin</u>, 395 U.S. at 243. A constitutionally valid plea must include a knowingly and voluntarily waiver of certain rights. These rights include the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. <u>Id.</u> While the court cannot presume a waiver of these three federal rights from a silent record, <u>id.</u>, the record in this case is not silent and the Court finds this claim to be meritless. Wilson had extensive time to speak with his counsel while considering the plea deal, (doc. 7-13, p. 150/229), and the court walked Wilson through his rights during the plea hearing (doc. 7-13, pp. 151-54/229). Wilson's claim was extensively considered at the district court level, where they had conducted a thorough review of the colloquy at the plea hearing and cited to specific portions of the guilty plea colloquy.

> THE COURT: All right. Mr. Wilson, you heard the offer from the State and the statement from your attorney. What would you like to do, sir?
>
> THE DEFENDANT: It's really a hard decision to make. I mean, I'm really confused because, you know what I'm saying, the plea bargain and all was read is all misconscrewed [sic] up, and I can't really just say right now, Mr. Pitman, what I want to do you, you know what I'm saying. Because like I say, I ain't know I was coming to court until like a week and half to plead guilty to this, you know what I'm saying.
>
> THE DEFENSE ATTORNEY: That's not true, Your Honor.
>
> THE COURT: All right. Well, sir, you were in court on April 17, 2009, and a first-degree murder trial was scheduled for September 14th, and it is still set for September 14th. This matter is before the Court today to see if you wish to accept the State's offer or if you wish to reject it and go to trial on September 14th. Would you like some additional time to talk to your attorney?
>
> THE DEFENDANT: Yes, sir.

10

> THE COURT: All right. Y'all go visit some more, and we'll bring you back when you're ready.
>
> …
>
> THE COURT: All right. Show the time is about two minutes after noon, and defendant has been in communication with his counsel throughout the morning, and the Court took a break when the defendant was brought up earlier to allow some additional time for defendant to confer with counsel. Mr. Wilson, what would you like to do? Do you wish to accept the State's offer or do you wish to reject it and proceed with trial?
>
> THE DEFENDANT: I wish to accept.
>
> …
>
> THE COURT: And do you also understand that you have a right against self-incrimination, which means you do not have to testify or give any evidence against yourself?
>
> THE DEFENDANT: Yes, sir.
>
> …
>
> THE COURT: And do you wish to accept the guilty plea at this time, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Show there is a factual basis for the acceptance of the guilty plea. The guilty plea is freely and voluntarily entered without anyone forcing or coercing the defendant to do so. Defendant understands the nature of the charges and the penalties associated therewith. Show that he is satisfied with the advice of his attorney. Show that he understands the nature of the charges and the penalties, and the guilty plea is freely and voluntarily entered without anyone forcing or coercing the defendant to do so. Show that the guilty plea is accepted.

(Doc. 7-14, pp. 146-48/311, see also doc. 7-13, pp. 148-157/229). Wilson failed to show that his plea was not knowingly and voluntarily as the result of the court's failure to inform him of his right to remain silent. As Wilson has failed to show how the state's

determination was contrary to, or involved an unreasonable application of clearly established federal law, Wilson's claim is without merit.

### D. Petitioner's guilty plea was not made without knowledge of his right to trial by jury.

Wilson contends that his guilty plea was involuntarily as he was not aware of his right to trial by jury. Wilson argues "[t]o state that petitioner has a right to a trial by jury, isn't unequivocally asking him: 'Do you wish to waive your right to a trial by jury?' it only suggest that he was informed that he had such a right."

The State contends that Wilson failed to exhaust this claim, stating that Wilson failed to articulate the claim as a federal question at the state level, thereby not giving the state court the opportunity to address it. Additionally, the State contends that he has failed to properly brief this claim as Wilson has failed to cite to any case law in support of his argument, and that Wilson's claim is a mere four sentences long. (Doc. 7-1).

In order to exhaust a claim, the petitioner must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoner's federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (internal quotations omitted). Therefore, the state courts must be alerted to the fact that the petitioner is asserting a claim under the United States Constitution. Id. To satisfy the "fairly present" requirement, Wilson must have "referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." See Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006), *cert. denied*, 549 U.S. 1134

12

(2007). In Wilson's Post-Conviction Relief Application filed in the First Judicial District Court, Wilson argued that he did not waive his right to trial by jury, and cited to Boykin when he stated that "there are several constitutional rights that take place when a guilty plea is entered in a state criminal trial" including the right to trial by jury. (Doc. 7-14, p. 103/311). Wilson reasserted his claim in the Second Circuit, by stating his plea was in violation of his constitutional rights, and referenced his due process right and equal protection of the law. (Doc. 7-14, pp. 165-66). Although brief, his claim asserts the basis of his issue with the plea colloquy and points to a specific exchange in the guilty plea transcript. Therefore, the Court will consider his claim properly exhausted.

The Sixth Amendment right of a defendant to a jury trial in a criminal case is a fundamental constitutional right. Duncan v. Louisiana, 391 U.S. 145, 157-58 (1968). Federal law governs whether a defendant has waived this right. Boykin v. Alabama, 395 U.S. 238, 243 (1969). A defendant can waive his right to a jury trial, if he does so voluntarily, knowingly, and intelligently, and whether or not the defendant has done so is based upon "the unique circumstances of each case." See Adams v. U.S. ex rel. McCann, 317 U.S. 269, 277-78 (1942). There is no specific colloquy that needs to be conducted before a jury waiver can be accepted, but the court may not presume that a defendant has waived the right to a jury trial from a silent record. Boykin, 395 U.S. at 243; Pierre v. Leger, 495 Fed.Appx. 403, 410-411 (2012).

In Wilson's case, the record is not silent and Wilson made a knowing and voluntary waiver of his right to a trial by jury. As the First Judicial District Court

noted in its ruling on Wilson's Application for Post-Conviction Relief, the trial court did advise Wilson that he had a "right to a jury trial" and that he "[did] not have to enter a guilty plea," and Wilson indicated that he understood. (Doc. 7-14, p. 148/311).

> THE COURT: And do you understand that you do not have to enter a plea of guilty, and that, in fact, you have a right to a jury trial, and at that jury trial the State would have to prove beyond a reasonable doubt that you are guilty. Do you understand that you have a right to a jury trial, sir, and that you do not have to enter a guilty plea?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you also understand at that jury trial that the State would have to prove beyond a reasonable doubt that you are guilty as charged. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that you have a right to confront your accusers, which means your attorney can cross-examine the State's witnesses. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you also understand that you would have a right to present witnesses and evidence in your own defense?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you also understand than [sic] you have a right against self-incrimination, which means you do not have to testify or give any evidence against yourself?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that by entering this guilty plea today that you are going to waive those rights that I have just described. However, you will reserve the right to take up on appeal the pretrial rulings. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Doc. 7-13, pp. 151-53/229).

The Court explained Wilson's rights to him and specifically asked Wilson if he understood that by entering this guilty plea today that he would waive those rights the Court described. Wilson replied "[y]es, sir." (Doc. 7-13, pp. 152-53/229). The transcript is clear. The trial court informed Wilson of his rights and even gave him additional time to discuss those rights with his attorney.

Wilson knowingly, intelligently, and voluntarily waived his right to a jury trial in exchange for the plea bargain. As Wilson has failed to show how the state's determination is contrary to, or involved an unreasonable application of clearly established federal law, Wilson's claim is without merit.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Wilson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __2nd__ day of March, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge